**The STATE of Ohio, Appellee,**

v.

**McCRONE, Appellant.**

[Cite as *State v. McCrone* (1989), 63 Ohio App.3d 831.]

Court of Appeals of Ohio,
Lorain County.

No. 89CA004479.

Decided Aug. 23, 1989.

*Thomas H. Sanborn,* Director of Law, for appellee.
*Michael J. Camera,* for appellant.

QUILLIN, Judge.

Defendant-appellant, David M. McCrone, challenges his convictions for obstructing official business in violation of R.C. 2921.31(A) and resisting arrest in violation of R.C. 2921.33(A). We reverse McCrone's conviction for obstructing official business but affirm his conviction for resisting arrest.

On February 20, 1988, at approximately 2:00 a.m., McCrone and three of his friends drove to 921 North Lake Street after leaving Dunfee's Bar in Amherst. The residence on North Lake Street was the home of Laura Toman, an acquaintance of one of McCrone's friends. After they arrived at Toman's residence, a fight occurred and two other residents called the police. The

police dispatcher notified the officers of an "aggravated burglary in progress" at 921 North Lake Street.

As McCrone, James Parker, and Keith Redmond were heading down the driveway to their car, Sergeant Jasinski radioed Patrolman Smith to obtain correct identification from the three men. Smith asked each for their name, address, Social Security number and birth date. Smith then asked McCrone for his Ohio driver's license to verify the information that McCrone had given. At first, McCrone refused to produce his driver's license. However, he eventually removed his wallet from his back pocket but would not permit Smith to see the contents of the wallet. McCrone was then placed under arrest and was charged with resisting arrest pursuant to R.C. 2921.33(A) for the ensuing struggle with the officers.

A jury found McCrone guilty on both charges.

McCrone raises two assignments of error.

### Assignment of Error 1

"The trial court erred in failing to grant defendant's motion for judgment of acquittal on the charge of obstructing official business (O.R.C. 2921.31) at the conclusion of all evidence."

■ McCrone contends that his failure to physically provide his Ohio driver's license to the police officer is not an "unprivileged act" as required by R.C. 2921.31. We agree.

R.C. 2921.31(A) provides:

"(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

The unprivileged act by the defendant " * * * must hamper or impede the law enforcement officer in the performance of lawful duties, and the defendant must have a purpose to prevent, obstruct or delay such performance. * * * " *State v. Pitts* (M.C. 1986), 31 Ohio Misc.2d 10, 31 OBR 359, 509 N.E.2d 1284. Generally, a person "cannot be guilty of obstructing official business by doing nothing" because an affirmative act by the defendant is required. *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942, 943–944.

In this instance, the prosecution introduced testimony that as James Parker, Keith Redmond and McCrone were leaving the residence, Sgt. Jasinski radioed Smith to detain the three and obtain proper identification from them. Smith testified that he recognized Parker and Redmond but because he did not recognize McCrone, and McCrone gave an out-of-county address, he wanted to

verify McCrone's statements because correct information was necessary if criminal charges were filed.

■ McCrone testified that he told Smith his name, address, and Social Security number but that he refused to produce his driver's license when Smith asked for verification of his identity. However, refusing to cooperate with a law enforcement officer is not punishable conduct. See *Columbus v. Michel* (1978), 55 Ohio App.2d 46, 378 N.E.2d 1077.

The record reflects that McCrone did nothing which would be sufficient to constitute an affirmative act which hindered the officer's investigation for purposes of R.C. 2921.31(A). Therefore, McCrone's motion for acquittal on the charge of obstructing official business should have been granted at the conclusion of all the evidence.

McCrone's first assignment of error is well taken.

### Assignment of Error 2

"The trial court erred in failing to grant defendant's motion for judgment of acquittal on the charge of resisting arrest (O.R.C. 2921.33) at the conclusion of all evidence."

McCrone contends that because his arrest was unlawful, he did not violate R.C. 2921.33(A). We disagree.

R.C. 2921.33(A) provides:

"No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

■ Because the element of a "lawful arrest" is part of the plain language of the statute, R.C. 2921.33(A) only prohibits the resisting of a lawful arrest. *Hoover v. Garfield Hts. Municipal Ct.* (C.A. 6, 1986), 802 F.2d 168, 174. In *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, paragraph three of the syllabus, the Supreme Court of Ohio held that:

"In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances."

However, in *Fraley*, the court construed Section 2355.01 of the Columbus Code of Ordinances which does not contain the language of "lawful arrest" used in R.C. 2921.33(A). Accordingly, the holding in *Fraley* does not control in this instance because McCrone was charged under R.C. 2921.33(A).

■ In determining whether the arrest was lawful, we must determine whether there was a "reasonable basis" for the arrest and not whether the

elements of the underlying charge were or could have been proven beyond a reasonable doubt. *State v. Johnson* (1982), 6 Ohio App.3d 56, 6 OBR 268, 453 N.E.2d 1101. A reasonable basis means whether a reasonable police officer under similar circumstances would have concluded that the defendant had committed a crime. *Id.* at 57, 6 OBR at 269, 453 N.E.2d at 1102.

"[W]henever a person's freedom of movement is curtailed by police with force or a show of authority, that person is seized for purposes of the Fourth Amendment analysis." *State v. McFarland* (1982), 4 Ohio App.3d 158, 159, 4 OBR 252, 253, 446 N.E.2d 1168, 1170. As a result, an investigative stop cannot occur without a show of authority or some type of force. Therefore, when Patrolman Smith detained McCrone for the purpose of obtaining proper identification, Smith performed a "seizure" which was subject to the requirements of the Fourth Amendment. See *Brown v. Texas* (1979), 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 361.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–907. So long as a police officer has a reasonable suspicion of criminal activity, a limited investigative stop of the suspect is justified. Therefore, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Id.* at 145, 92 S.Ct. at 1923, 32 L.Ed.2d at 616.

As approved by the Supreme Court of Ohio in a similar factual situation, see *State v. Freeman* (1980), 64 Ohio St.2d 291, 296, 18 O.O.3d 472, 475, 414 N.E.2d 1044, 1047, 1048. Patrolman Smith made a brief stop of McCrone in order to investigate and to maintain the status quo momentarily while obtaining more information, namely, some identification. However, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The reasonableness of the officer's conduct is determined by balancing the need for the stop against the gravity of the intrusion. *Id.*

 Considering the seriousness of the offense and the likelihood of McCrone's involvement due to his proximity to the residence of the alleged aggravated burglary, it could be properly concluded that the officer's conduct was reasonable because the need for the stop outweighed the limited intrusion of McCrone's detention. Therefore, we cannot say that Patrolman Smith acted unreasonably in briefly detaining McCrone.

 If a suspect satisfactorily answers the questions of the officer the scope of the stop has been fulfilled and it is unlikely that the officer can continue to question the suspect in an exploratory manner. However, if the suspect gives evasive or implausible answers, this conduct combined with other factors may justify continued detention and investigation. Ringel, Searches & Seizures, Arrests and Confessions (1987) 13–52, Section 13.5(b). In other words, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238. Until Patrolman Smith was convinced that he had McCrone's correct name, address, Social Security number and birth date, he had not satisfied the purpose for the stop, nor had he allayed Smith's suspicions. Accordingly, we hold that McCrone was properly detained until McCrone verified the statements he made to Smith.

 In this instance, McCrone refused to verify his identity by showing Patrolman Smith his driver's license, but instead was abusive and used obscene language. Moreover, when McCrone eventually removed his wallet containing his driver's license from his back pocket, McCrone would not allow Patrolman Smith to see inside the wallet and pulled the wallet out of Smith's reach. McCrone was also seen leaving 921 North Lake Street, the site of the alleged aggravated burglary after 2:30 a.m. McCrone and two other men had left by the back door of the residence. As they left, the people inside the residence told Sgt. Jasinski that McCrone was one of the people responsible for the problems which prompted the call to the police.

Based on this testimony, Patrolman Smith acted reasonably in physically detaining McCrone until the purpose of the stop was satisfied. We cannot say that where a police officer knows that the defendant, a likely participant in criminal activity, has documentation of his identity in his possession but refuses to produce such documentation, that it is improper for the officer to physically detain the defendant until he produces such documentation. Moreover, resisting such a lawful detainment is sufficient to constitute a violation of R.C. 2921.33(A).

Therefore, we hold that the seizure was reasonable because Patrolman Smith's action " 'was justified at its inception, and * * * was reasonably

related in scope to the circumstances which justified the interference in the first place,' " and thus, lawful. *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 491, quoting *Terry, supra,* 392 U.S. at 19–20, 88 S.Ct. at 1878–1879, 20 L.Ed.2d at 904–905. The jury could properly determine that McCrone was guilty of resisting a lawful arrest because there existed a reasonable basis for the arrest.

McCrone's second assignment of error is overruled.

McCrone's conviction for violating R.C. 2921.31(A) is reversed; McCrone's conviction for violating R.C. 2921.33(A) is affirmed.

*Judgment affirmed in part
and reversed in part.*

CACIOPPO, P.J., and REECE, J., concur.